UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| CATHY ANGELINE BROOKS-HARRIS | ) | |
| | ) | |
| V. | ) | NO. 2:15-CV-252 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. ' 636 for a report and recommendation. Plaintiff's application for Disability Insurance Benefits under the Social Security Act was denied by the Commissioner following a hearing before an Administrative Law Judge ["ALJ"]. This action is for judicial review of that adverse decision. Both the plaintiff and the defendant Commissioner have filed Motions for Summary Judgment [Docs. 10 and 15].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). ASubstantial evidence@ is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were

to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff's medical history was summarized by the Commissioner in her brief [Doc. 16] as follows:

> From 1998 through 2013, Plaintiff saw chiropractor David Merrill, D.C., on a frequent basis, generally complaining of neck and low back pain (Tr. 326-61, 862-64, 874-77). In February 2009, Plaintiff was diagnosed with breast cancer (Tr. 225-52). She underwent a bilateral mastectomy, followed by chemotherapy and reconstructive surgery (Tr. 215, 443-55, 519). After her cancer treatment, Plaintiff returned to work as a press operator (Tr. 371).
>
> In June 2011, Plaintiff underwent surgery to repair a torn tendon in her right ankle (Tr. 253-57). In October 2011, Plaintiff complained to primary care practitioner Jennifer Shafer, D.O., of depression, also reporting recent ankle surgery (Tr. 719-23). Dr. Shafer diagnosed anxiety disorder and depression, increased Plaintiff's dosage of Prozac, and recommended that she see a psychiatrist (Tr. 723). Plaintiff saw Dr. Shafer again in January 2012, complaining of ankle pain, allergies, and hot flashes (Tr. 697-702). Findings on physical and mental status examinations were unremarkable (Tr. 700). Dr. Shafer continued Plaintiff's medications (Tr. 702). In May 2012, Plaintiff complained to Dr. Shafer of irritability and hot flashes (Tr. 671). Findings on physical examination in May and July 2012 were normal, showing normal gait, movement, and muscle strength, and no joint instability or swelling (Tr. 668, 674).
>
> On September 12, 2012, Plaintiff first met with orthopedist Glenn Trent, M.D., at complaining of low back pain that radiated into the right thigh and calf (Tr. 322-23). X-rays of Plaintiff's spine and hips were unremarkable (Tr. 321). Dr. Trent noted some tenderness, but no swelling, list, or spasm (Tr. 322). Magnetic resonance imaging (MRI) of Plaintiff's lumbar spine on September 19, 2012, showed no abnormalities (Tr. 324). Plaintiff returned to Dr. Trent on September 24, 2012, again complaining of back pain (Tr. 320). Dr. Trent observed that the MRI was "absolutely clean with only minimal degenerative

changes" (Tr. 320). Unable to explain the source of Plaintiff's pain, he referred Plaintiff to physical therapy (Tr. 320).

Plaintiff saw psychiatrist Eric Moffett, M.D., for an initial psychiatric evaluation on September 27, 2012 (Tr. 792-93). On mental status examination, Dr. Moffett observed that Plaintiff was anxious and depressed, with intact memory, linear thought process, unremarkable thought content, and normal judgment (Tr. 792). On October 11, 2012, Dr. Moffett observed that Plaintiff had a depressed mood and blunt but appropriate affect (Tr. 791). All other findings were normal (Tr. 791).

Plaintiff returned to Dr. Trent on October 25, 2012, reporting continued pain, somewhat improved after two weeks of physical therapy (Tr. 303, 311-15, 319). Plaintiff had several additional sessions of physical therapy in November (Tr. 301-13). On November 19, 2012, Plaintiff told Dr. Trent that therapy had gone well, and her leg pain was completely gone (Tr. 318, 799). Dr. Trent completed a "return to work" form for Plaintiff's employer, releasing her to return to work in a light duty status (Tr. 318, 799).

On November 27, 2012, Plaintiff saw Dr. Shafer for a routine follow up, complaining of fatigue and back pain (Tr. 734-38). Plaintiff reported improvement in back and leg pain with physical therapy, but she told Dr. Shafer her pain would "probably reoccur if she tried to go back to her job with heavy lifting" (Tr. 738).

When Plaintiff met with Dr. Moffett on December 10, 2012, mental status examination findings were completely normal, with euthymic mood, appropriate affect, and intact memory, and normal judgment (Tr. 788-91).

A week later, on December 17, 2012, Plaintiff saw Dr. Trent, complaining of increased back and buttock pain (Tr. 317, 797). Dr. Trent noted low back pain of "questionable cause" in light of the mild disc degeneration and no canal narrowing (Tr. 317, 797). He referred Plaintiff for pain management injections (Tr. 317, 797). Dr. Trent completed a work reentry form for Plaintiff's employer that day, in which he opined that Plaintiff should not lift more than 15 pounds, sit for more than 2 hours at a time, or perform activities at unprotected heights, noting that these restrictions were temporary (Tr. 796).

Plaintiff was discharged from therapy on December 19, 2012, after showing minimal improvement with physical therapy (Tr. 794). A month later, on January 16, 2013, Plaintiff saw pain specialist Timothy Smyth, M.D., upon referral from Dr. Trent, complaining of back, buttock, and ankle pain (Tr. 363-65). Dr. Smyth assessed lumbosacral spondylosis, possible sacroilitis, lumbosacral myofascial pain, and left ankle pain (Tr. 364). Dr. Smyth recommended medial branch blocks to determine if Plaintiff's pain was caused by facet joint issues (Tr. 365). Dr. Smyth administered medial branch blocks on January 24, 2013 (Tr. 366-67).

On February 7, 2013, Dr. Moffett observed that Plaintiff had a depressed mood, with appropriate affect, intact memory, unremarkable thought content, linear thought process, and normal judgment (Tr. 788, 856). One week later, Dr.

3

Moffett completed a one-page form, indicating that Plaintiff was unable to carry out simple instructions and maintain a work routine, respond appropriately to stress and routine changes (Tr. 782).

On February 13, 2013, Plaintiff complained to Dr. Smyth of continued pain and asked the doctor to complete disability papers (Tr. 369). Dr. Smyth told Plaintiff that – notwithstanding "her protestations of pain and inability to do her job" – in his opinion, she was not disabled, and he had "no objective data to point to that would restrict her in any way from doing her job" working in the print shop (Tr. 369).

Plaintiff saw Dr. Moffett again on February 27, 2013 (Tr. 787). Treatment notes are not legible, but they do reference Plaintiff's efforts to get disability (Tr. 787). The notes do not contain mental status findings (Tr. 787).

On March 12, 2013, Wayne Gilbert, M.D., examined Plaintiff at the request of the state Disability Determination Services (DDS) (Tr. 601). Plaintiff reported a history of hip and low back pain, dating to the early 2000s, that became more severe in July 2012, when she pulled her back when working on her lawn (Tr. 601). Plaintiff said an orthopedist restricted her to lifting no more than 15 pounds, and because her employer was unable to accommodate the restrictions, she was terminated (Tr. 601). Plaintiff also complained of a left heel fracture in 1995; a right ankle tendon tear in 2011; a history of breast cancer, resulting in continued numbness of the right upper arm; and depression and anxiety, treated by counseling and medication (Tr. 601-02).

Dr. Gilbert noted that x-rays of Plaintiff's right hip were unremarkable, and x-rays of her right heel showed findings secondary to previously healed bony trauma (Tr. 605-06). The doctor observed that Plaintiff had 4/5 to 5/5 strength in all major muscle groups and a full range of motion in the cervical and lumbar spine, shoulders, elbows, wrists, hips, knees, and ankles (Tr. 603). Dr. Gilbert diagnosed chronic low back and right hip pain with likely radiculopathy; status post right heel fracture, right ankle injury, and bilateral mastectomy; and reported depression and anxiety (Tr. 604). He opined that Plaintiff could sit for 1 hour, stand for 30 minutes, walk 1 block, and lift 30 pounds and carry 25 pounds occasionally (Tr. 604).

On April 11, 2013, Wayne Lanthorn, Ph.D., and Donna Abbott, M.A., examined Plaintiff at DDS's request (Tr. 607-11). Plaintiff alleged that she was disabled due to her low back and right hip, not her mental impairments, although she felt "pretty down" and was frequently tired (Tr. 607, 609). Dr. Lanthorn diagnosed major depressive disorder, noting that Plaintiff was pleasant and cooperative with no social limitations (Tr. 610). He opined that Plaintiff would be able to set goals and achieve goals independently, though she may have moderate difficulty working with the public and interact with supervisors, adapting to change, and dealing with stress (Tr. 611).

On April 23, 2013, after reviewing evidence of record, DDS consultant Frank Pennington, M.D., opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk and sit 6 hours each in an 8-hour

4

day; frequently climb ramps and stairs, ladders, ropes, and scaffolds; frequently stoop, crouch and crawl; and she had limitations in her ability to reach, pull, handle, and finger with her right arm (Tr. 58).

On April 25, 2013, DDS psychologist Rebecca Hansmann, Psy.D., opined that Plaintiff could understand and remember simple and multi-level detailed tasks; concentrate and persist for such tasks for an 8-hour workday with routine breaks; interact with the public, coworkers and supervisors; and adapt to infrequent change (Tr. 60-61).

Plaintiff met with Dr. Shafer on June 11, 2013, reporting chronic back and ankle pain, but claiming she was taking medication for breakthrough pain only (Tr. 836). Dr. Shafer observed that Plaintiff had a normal gait but stiff movement, and needed to walk to relieve pain when sitting for extended periods (Tr. 835). Plaintiff's memory and attention were normal (Tr. 836).

On July 26, 2013, medical consultant Thomas Thrush, M.D., reviewed the evidence of record and opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; stand/walk and sit 6 hours each in an 8-hour day; frequently climb and engage in other postural activities; use her right upper extremity with some limitations (Tr. 76-76).

Plaintiff presented to Dr. Shafer on October 8, 2013, with the results of her functional capacity examination, accompanied by her case manager (Tr. 819). Plaintiff complained of pain at a level of 10/10, in her back, right knee, left ankle, and right leg (Tr. 819). Dr. Shafer diagnosed chronic pain, backache, and hip pain, noting that Plaintiff was limping on the right side (Tr. 822). Dr. Shafer noted that a "return to work" examination showed that Plaintiff could return to work the next day (Tr. 823). Dr. Shafer wrote that a "functional capacity exam confirms ability to work," adding that Plaintiff's ability to work was limited due to Plaintiff's subjective reports of pain (Tr. 823). Plaintiff indicated that her pain was controlled by narcotic medication. Plaintiff indicated she would be able to perform her previous job, but only if she were allowed to take pain medication while working (Tr. 823).

Plaintiff saw Dr. Shafer next on December 10, 2013, for a routine follow-up, complaining primarily of hypertension (Tr. 809-15). Plaintiff said her pain had improved since starting with a chiropractor and taking supplements (Tr. 809). Physical and mental status examination findings were unremarkable (Tr. 813). Diagnoses included hypothyroidism, high cholesterol, hypertension, and prediabetes (Tr. 813). Dr. Shafer recommended … Plaintiff to return in six months (Tr. 815).

On January 13, 2014, Dr. Merrill opined that Plaintiff could lift and carry 25 pounds occasionally and 10 to 15 pounds frequently, consistent with light work (Tr. 842). She could stand or walk for 10 to 15 minutes of each hour, and sit for 10 to 15 minutes per (illegible) hours (Tr. 842). She could never climb, kneel or crouch, and was limited in her ability to stoop and crawl (Tr. 843). Dr. Merrill noted no limitations in Plaintiff's ability to use her arms (Tr. 843).

Dr. Moffett completed a psychiatric assessment on January 21, 2014, in

5

which he opined that Plaintiff had fair ability to deal with work-related stress and good ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, function independently, and maintain attention and concentration (Tr. 845). Plaintiff had good ability to understand, remember, and carry out simple and detailed job instructions, and fair ability to carry out complex job instructions (Tr. 846). She had very good ability to maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations; and good ability to demonstrate reliability (Tr. 846).

[Doc. 16, pgs. 2-9].

At the administrative hearing, the ALJ called Dr. Robert S. Spangler, a vocational expert ["VE"]. He asked Dr. Spangler various hypothetical questions based upon a set of restrictions at various exertional levels. The set of restrictions were a person who could perform "frequent posturals, no ropes, ladders, scaffolds, handling and fingering but frequent with the right upper extremity, overhead reaching and frequent with the right upper extremity, avoid concentrated exposure to hazards, and limited to simple unskilled work with infrequent change.…" (Tr. 45). At the medium level of exertion, Dr. Spangler identified the jobs of being a maid, a dining room helper, a dishwasher, and a non-farm animal care. There were 1,411,225 such jobs in the national economy and 35,574 in Tennessee. Plaintiff's non-exertional restrictions, in Dr. Spangler's opinion, would reduce the number of these jobs by 60%. (Tr. 46). At the light level, there would be 2,252,702 in the United States and 42,159 in the state. Once again, the non-exertional restrictions would reduce the number by 60%. At the sedentary level, there would be 163,379 in the national economy, and 3,481 in the state. This time the non-exertional impairments would reduce the number by only 40%.

The plaintiff was 48 years of age at the time of her alleged disability onset date of August 26, 2012. She has a high school education. The ALJ found that the plaintiff cannot return to her past relevant work.

On July 18, 2014, the ALJ rendered his hearing decision. He found that the plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date. He found that the plaintiff had severe impairments of "degenerative disc disease, status post right heel fracture, status post right ankle injury, right arm disorder status post bilateral mastectomy for breast cancer, anxiety and depression." (Tr. 20). He found that the plaintiff did not meet or equal any of the "listed" impairments set forth in the regulations in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-21). In this regard, he found the severity of plaintiff's mental impairments did not satisfy the "listings of 12.04 or 12.06." (Tr. 21). With respect to activities of daily living, he found that plaintiff had only a mild restriction. He did note that "while her impairments may interfere with complex activities, her performance of a simple routine is appropriate, effective and sustainable." (Tr. 21). With respect to social functioning, he found the plaintiff had only mild difficulties. In the area of concentration, persistence or pace, he found that the plaintiff would experience moderate difficulties. In that regard, he found that the plaintiff could "sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in routine and repetitive, not detailed or complex, work settings." (Tr. 21). He found no episodes of decompensation on the part of the plaintiff of any extended duration. (Tr.

7

21).

The ALJ then announced his opinion as to the plaintiff's residual functional capacity ["RFC"]. He found that she could do "simple, unskilled light work…that involves: frequent postural, no climbing ladders/ropes/scaffolds, frequent handling and fingering with the right upper extremity, and frequent reaching with the right upper extremity, that does not involve concentrated exposure to hazards and that involves infrequent changes in a work setting." (Tr. 21). He discussed the plaintiff's testimony at the administrative hearing regarding her pain, limitations in standing, occasional use of crutches or a cane, and need to elevate her legs. He also stated she complained of intermittent depression and anxiety with right arm numbness as a result of her cancer surgery. He also recounted her function reports submitted to the Commissioner and the daily activities she described. (Tr. 22).

He then began his analysis of the credibility of the plaintiff's complaints by reviewing the medical evidence, as it is set out hereinabove. He noted the various assessments by the doctors and psychologists, both treating, examining, and non-examining. (Tr. 22-25). After reviewing all of this evidence, he found that plaintiff was not, in his opinion as the finder of fact, completely credible in her complaints of diminished ability to function from a physical standpoint. In this regard, he noted the improvement of her various conditions with treatment, her lack of back surgery, and her negative x-rays and MRI. (Tr. 25-26).

He discussed the weight he gave to the various opining medical sources regarding

8

her physical capabilities. He gave Dr. Smyth, the pain management physician who opined that the plaintiff was not disabled, little weight because his opinion went to the legal issue to be determined by the ALJ. He gave some weight to Dr. Gilbert, the consultative examiner, and Dr. Merrill, plaintiff's treating psychiatrist, although he disagreed with their opined restrictions regarding plaintiff sitting, standing and walking, finding that other evidence contradicted such severe restrictions, parts of his report contradicted the severe restrictions, and because those restrictions were apparently largely based on plaintiff's subjective complaints. The ALJ disagreed with Dr. Merrill finding that she did have limitations to her upper arm. Also, the ALJ noted that the restrictions given while plaintiff was still attempting to work in 2012 to lift no more than 15 pounds and limit standing, walking, bending and twisting were intended to be only temporary restrictions. He gave the State Agency physicians little weight because they opined plaintiff could do a broad range of medium work. (Tr. 26-27).

He then discussed the mental evidence and assigned weight to the opinions of Dr. Moffett, Dr. Lanthorn, and the State Agency psychologists. Regarding Dr. Moffett, he stated the severe limitations opined by him were inconsistent with the totality of the other evidence in the record and with his own notes. The ALJ gave some weight to Dr. Lanthorn, but he still limited the plaintiff to simple, unskilled work. He gave some weight to the State Agency psychologists, but disagreed with their opinion that the plaintiff had moderate limitations in social functioning, noting that plaintiff had friends and family with whom she visited and went out to eat. (Tr. 27).

9

While the plaintiff could not perform her past relevant work, which had required medium exertion and was skilled vocationally, he found that there was other work which she could perform. He noted that the VE had identified a substantial number of jobs at the hearing which a person with her RFC could perform. Accordingly, he found that she was not disabled. (Tr. 28-29).

Plaintiff raises two broad issues in her Motion. First, she asserts that the ALJ erred by failing to properly evaluate treating source opinions. Second, she claims the ALJ failed to properly evaluate the opinions of the examining sources. The key theme with respect to the plaintiff's arguments is that if the plaintiff was limited to sedentary work (lifting no more than 10 pounds, etc.), she would have been disabled as a matter of law when she reached age 50 on September 17, 2013 under Rule 201.14 of the Medical-Vocational Guidelines [the "Grid"]. Plaintiff maintains that if the ALJ had properly considered the opinions from these sources, he would have found that her RFC was for no more than sedentary work.

With respect to treating sources, the first that plaintiff addresses is Dr. Merrill, her chiropractor, and the medical assessment form he submitted on her behalf (Tr. 842-43). The ALJ did consider Dr. Merrill's opinion, which was that the plaintiff was capable of lifting and carrying 25 pounds occasionally and 10 to 15 pounds frequently, standing and walking for up to 15 minutes per hour and sitting for up to 15 minutes per hour (Tr. 842-43). The ALJ, who agreed with Dr. Merrill's assessment as to how much weight plaintiff could lift, disagreed with Dr. Merrill's restrictions on standing, walking and

10

sitting. Although Dr. Merrill stated that he based his findings on imaging studies showing bulging disc, as well as his physical exam and decreased range of motion, it is abundantly clear from the medical reports hereinabove from Dr. Trent (Tr. 320, 321 and 324) that imaging studies did not explain any basis for the plaintiff's degree of pain. The ALJ found that Dr. Merrill's opinions on plaintiff's inability to stand, walk and sit were based primarily upon plaintiff's subjective complaints. Therefore, the ALJ had other substantial evidence in the record to support his decision to give little weight to that portion of Dr. Merrill's opinion.

Plaintiff next asserts that the ALJ failed to properly evaluate Dr. Trent's Medical Evaluation Report (Tr. 796). The ALJ did discuss the report, (Tr. 23), and noted that the restrictions were only "temporary work restrictions." In fact, Dr. Trent's form itself states that the restrictions were temporary. Dr. Trent's x-ray and MRI findings set out above showed no significant abnormalities. He referred to the MRI as "absolutely clean." There was no notation of muscle spasm or other involuntary symptoms being exhibited. Therefore, the restrictions in his report were temporary and were obviously based upon plaintiff's subjective complaints. While the ALJ did not assign weight one way or the other to Dr. Trent's report, this was harmless error at best, because even the temporary restrictions had no diagnostic findings to support them.

Dr. Shafer was the plaintiff's primary care physician. Dr. Shafer did state that a "manual labor job will be limited by pain in the future." (Tr. 823). However, Dr. Shafer stated in that same report that the plaintiff could return to work, although she

11

would be limited as to the level of work due to pain. That is precisely what the ALJ found in the RFC finding and limited plaintiff to a reduced range of light work. Dr. Shafer's opinion in this regard is not at odds with the ALJ's findings. A nebulous statement that manual labor would be limited by pain is akin to a doctor saying a patient can't work, which is an issue reserved to the Commissioner. The ALJ agreed plaintiff was limited, and considered Dr. Shafer's report in his RFC. Dr. Shafer shed no light on plaintiff's ability to sit, stand or walk, and is not inconsistent with the RFC found by the ALJ.

Plaintiff also argues that the ALJ did not give proper weight to Dr. Moffett, plaintiff's treating mental health source. Dr. Moffett submitted two reports. The first (Tr. 782) on February 14, 2013, opined in part that plaintiff would be unable to remember and carry out simple 1-2 step instructions, to maintain an ordinary work routine or to respond appropriately to normal stress and routine changes. This opinion was discussed by the ALJ and referenced by its exhibit number in the record, Exhibit 16F (Tr. 24). He also discussed (Tr. 24-25) the second report submitted by Dr. Moffett in January 2014 (Tr. 845-46). In that report, plaintiff had a good ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, remember and carry out simple and detailed instructions, and maintain attention and concentration, with a fair ability to deal with work stresses. "Fair" is defined on the form as "seriously limited but not precluded." (Tr. 845). The ALJ gave Dr. Moffett's opinion little weight and stated his reasons for doing so (Tr. 27). The most telling reason is due to the inconsistencies.

For example, Dr. Moffett's opinion was that the plaintiff could not remember or carry out simple instructions in February 2013, and yet had a good ability to do so in January 2014. The ALJ was within his prerogative as finder of fact in noting these inconsistencies and giving less weight to Dr. Moffett's opinion because of them. Also, although the plaintiff asserts that Dr. Moffett's opinion that plaintiff only has a "fair" ability to deal with work stresses, the ALJ limited her to performing simple, unskilled work. There is simply no discernable error with respect to the ALJ's treatment of Dr. Moffett which would require reversal or a remand.

The plaintiff also asserts that the ALJ did not properly evaluate the consultative examining medical and mental health sources, and that if he had, plaintiff's limitations would have been found much more limited than those in the RFC finding. In this respect, plaintiff points to the weight given by the ALJ to the consultative psychologist, Dr. Lanthorn, and the medical exam and opinion of Dr. Gilbert.

Regarding Dr. Gilbert, plaintiff asserts that his opinion would preclude plaintiff from performing light work because of the portion of Dr. Gilbert's opinion where he found plaintiff capable of sitting for an hour and standing for 30 minutes and walking a block (Tr. 604). Plaintiff asserts that the ALJ did not state with clarity why he only gave Dr. Gilbert's opinion some weight, and instead indicated that the opinion contained inconsistencies and lacked support from other evidence in the record. Plaintiff asserts that the physical exam performed on plaintiff by Dr. Gilbert provides support for the limitation on standing and walking. However, as noted by the ALJ (Tr. 23), the exam

13

showed a full range of motion in the cervical and dorsolumbar spine, the upper extremities, hips and knees.  Dr. Gilbert also noted that she had good strength in her major muscle groups.  He did note some difficulties with the right hip and an ability to only squat to 40%.  These findings do not correlate with the severe limitations he opined on standing and walking.  Instead, these restrictions appear to have been heavily biased by the plaintiff's subjective complaints (Tr. 601).  The ALJ had ample contrary evidence to discount Dr. Gilbert's opinion.  For instance, Dr. Gilbert's opinion in that regard was inconsistent with the MRI findings of Dr. Trent (Tr. 324), the opinion of the treating pain specialist Dr. Smyth (Tr. 369), Dr. Shafer's opinion that the plaintiff could return to work (Tr. 823), and the opinions of State Agency physicians Dr. Pennington (Tr. 58) and Dr. Thrush (75-76), each of whom opined the plaintiff could perform work in the medium range.  Also, Dr. Gilbert opined that the plaintiff could occasionally lift 30 pounds and occasionally carry 25 pounds.  Not only is that consistent with light work, but it is also inconsistent with the restrictions on walking.  The Court finds no error in the ALJ's evaluation of Dr. Gilbert's opinion.

Plaintiff also asserts that the ALJ erred in his evaluation of the opinion of Dr. Wayne Lanthorn, the consultative psychologist, particularly his opinion that the plaintiff "may have moderate difficulty working with the public and interacting with supervisors."  (Tr. 611).  However, Dr. Lanthorn, in his clinical interview of plaintiff, noted that she related well to her family and friends, and that "social interaction does not appear to be significantly limited."  (Tr. 610).  Also, her treating psychiatrist, Dr. Moffett, opined

14

that the plaintiff would have a good ability to relate to coworkers, interact with supervisors, and deal with the public (Tr. 845). This Court cannot say that the ALJ's evaluation of Dr. Lanthorn was flawed.

The Court also notes that the plaintiff has been given conservative treatment with medication for any ambulatory issues. Once again, pain management physician Dr. Smyth, an expert in treating and evaluating the capabilities of patients with chronic pain, could find "no objective data to point to that would restrict her in any way from doing her job…," and that he felt this way in spite of her "protestations of pain." (Tr. 369).

In the opinion of the Court, there was substantial evidence to support the ALJ's determination of the plaintiff's RFC, and that he committed no reversible error in his evaluation of the evidence. Also, the VE identified a substantial number of jobs based on that RFC finding. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 15] be GRANTED.[1]

Respectfully submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).